MALAEOLA of Onenoa, LEMANU TUITUI of Aoa, PUAATUUA SALOFI of Tula, and TOGAFAU SEFULU of Amouli, Plaintiffs

v.

NU'U of Aoa, Defendant

No. 38A-1949

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Aumoeualogo" of Aoa]

July 31, 1950

A. A. MORROW, *Chief Justice;* TIUMALU, *District Judge;* and MULI, *District Judge.*

DECISION ON REHEARING

Heard at Fagatogo July 12, 1950.
Meauta for Puaatuua; Viavia for Togafau; Lemanu *pro se.*

MORROW, *Chief Justice.*

Upon the petition of candidate Togafau joined in by Lemanu, the Court granted a rehearing upon the issue of hereditary right.

At the argument on the petition Togafau informed the court that he was then in a position to prove that the alleged agreement signed by the matais of the Logo family on October 8, 1919 to the effect that the successor to Logo Nuu should come from the Fanuatanu branch of the family was a forgery. He further informed the court that he had in his possession a Logo family history book which would establish the fact that there never was any such person as Logo Tua of whom candidate Puaatuua claimed at the first hearing to be a descendant. He hoped to prove by such family history book (it was, he said, prepared by himself 24 years ago from old family history records of the Logo family) that Puaatuua had no hereditary right.

Candidate Nuu refused to join in the petition for a rehearing. After Nuu made a statement to the court suggesting that he was satisfied with the decision awarding the Logo name to Puaatuua the Chief Justice said to Nuu "I rather take it from your statement that you are satisfied with the decision and are not asking for a rehearing" to

which Nuu answered "Yes." Mamea, a representative of candidate Malaeola, informed the court that Malaeola was satisfied with the decision. Malaeola did not join in the petition for a rehearing.

There was no evidence whatever introduced at either the original hearing or at the rehearing indicating that the document, dated October 8, 1919, purporting to be signed by the matais of the Logo family and containing an agreement that the successor to Logo Nuu should come from the Fanuatanu branch was not genuine. Its proper execution was fully established by the testimony of an unimpeached eye witness to its execution who was personally acquainted with all the signers. Under the law, it being more than 30 years old, its authenticity was established also by its age. 20 Am.Jur. 784; II Jones on Evidence (4th ed.) 1012. The document is obviously an ancient one, both the paper and the signatures being discolored by age. We are convinced that it is genuine.

As we stated in the original decision, the court in awarding the title is bound by Sec. 933 of the A. S. Code and not the document, but the document nevertheless is evidence of an admission by Logo Nuu the then matai, and the other matais of the Logo family who signed it that there is a Fanuatanu branch of the Logo family.

At the rehearing candidate Togafau, after assuring the court at the argument on the petition that he personally had possession of a Logo family history book that would establish that there never was a Logo Tua, failed to produce such book in court or account for its absence. "There is a recognized legal presumption that a party will produce evidence which is favorable to him if such evidence exists and is available. And the mere withholding or failing to produce material evidence which is available and would in the circumstances of the case, be expected to be

produced, gives rise to a natural inference—less forceful than that arising from the destruction, fabrication or suppression of evidence in which other parties have a legal interest but constantly acted upon by the courts—that such evidence is held back because it would be unfavorable or adverse to the party withholding it." I Jones on Evidence (4th ed.) p. 49. We think that the failure of Togafau to produce the Logo family history of which he said he had possession warrants an inference that if he had produced it, the evidence would have been unfavorable to him. "It is a well-established rule that where relevant evidence which would properly be a part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him." 20 Am.Jur. 188–189. Togafau made no explanation whatever as to why he did not produce the family history.

If Togafau had possession of a Logo family record which would show that there was no Logo Tua and that Puaatuua has no hereditary right, why did he not produce it? The natural inference is that he either does not have the history book, or if he does its production would result in evidence unfavorable to Togafau.

Togafau put his aiga Afemata, a member of the Logo family, on the witness stand to prove that there was no Logo Tua. However, on cross-examination Afemata was asked: "Did you see Logo Tua?" to which query he answered: "I did." Not only did witness Afemata admit that there was a Logo Tua and that he had seen him, but he further admitted that candidate Puaatuua descended from Logo Tua. He was asked: "Are you telling us that Puaatuua descended from Logo Tua?" He answered: "Yes." Afemata's testimony on cross-examination leads to the

conclusion that Puaatuua is the grandson of Logo Tua and has hereditary right to the Logo title.

Witness Afemata told the court a story about Logo Tua which the court does not consider worthy of belief. He said Logo Tua's real name was Tualogo (one word); that it was a young man's name and that the two parts of the name were reversed with the result that he was called Logo Tua instead of Tualogo. Suffice it to say that witness Afemata was not referred to in the case as Mata Afe or Togafau as Fau Toga or candidate Puaatuua as Tuua Puaa. The judges of this court know that the village of Fagatuia is not referred to as Tuia Faga; nor is the village of Fagatogo referred to as Togo Faga.

The Fanuatanu branch, of whom Puaatuua is admittedly one, met with the other branches of the Logo family to select a matai. At that meeting it was agreed by the family that there should be three holders of the name. One of the three was Puaatuua.

On cross examination Afemata testified at the rehearing in part as follows:

Q. ". . . will you tell the court how the whole family get together and decide on three to hold the title jointly?"

A. "I remember very well that he (Puaatuua) was the one that first made a speech when the family was together and I made a speech before the family that there should be three holders of the one title on this ground. First I do not like the title to be brought before the court. Second I do not like this to have trouble in the family and that is the reason why I want three to hold the title jointly. The other parties would like one to hold the title and another person jump up that he would like two to hold the title jointly. One of the candidates stood up and said he would like five candidates to hold the title."

Q. "Who were the three that you (Afemata) were willing to hold the title jointly?"

A. "Puaatuua on one side. Lemanu Tuitui on the other side and Togafau or Nuu on my side but it is up to Nuu or Togafau whoever of them wants to hold the title their side is perfectly willing to have one."

553

Q. "Is the court to understand that you (Afemata) wanted three to hold the title jointly and said so?"

A. "Yes."

Q. "And the three that you wanted were Puaatuua, Lemanu and either Nuu or Togafau. Is that what you told the family?"

A. "Yes."

Q. "You suggested that Puaatuua be one of the three. You suggested that to the family?"

A. "Yes I did."

Afemata was further questioned on cross examination with regard to what he told the family at the meetings as follows:

Q. "But you did not directly tell the family that you Puaatuua have no right to this family?"

A. "No."

Q. "During the meeting of the family appointing three, Puaatuua, Nuu and Lemanu to hold the title jointly—during that meeting you did not raise any objection that you Puaatuua have no right to this title, is that correct?"

A. "I did not raise any objection."

■ This court is fully aware of the customs of the Samoans and knows that a Samoan family will not select a man to be its matai unless he has some hereditary right to the title. That the Logo family at a meeting attended by all branches should have selected Puaatuua to be a joint holder of the name Logo, if he did not have some hereditary right to the name, is simply incredible in view of Samoan custom. That Afemata, the witness, admittedly a member of the Logo family and the holder of a matai name himself should have stood up in the Logo family meeting and suggested that Puaatuua, unless he had some hereditary right to the name, should be one of the three joint holders is likewise incredible.

We think Togafau's witness Afemata told the truth on cross-examination when he testified there was a Logo Tua and that Puaatuua is one of his descendants.

Puaatuua produced that part of his family record relating to the Logo family. It was prepared from old family documents in 1947, about two years before the death of Logo Nuu. Puaatuua's family record showed that he is the son of Saloga, the daughter of Logo Tua by Sa, a daughter of Tapopo. Afemata, witness for Togafau, testified that Logo Tua "married Sasagi and their daughter was Saloga the mother of Puaatuua." He further testified that "I am connected with Puaatuua in the Tapopo family," and "Puaatuua is a true member of my family in Alao." Tapopo is a matai title of Alao. This part of the testimony of Afemata tends to confirm the truth of Puaatuua's family record.

Whether Puaatuua is the grandson of Logo Tua and has hereditary right to the Logo name is a matter of fact.

The issue must be determined from the evidence. "It is elementary that in civil cases a mere preponderance of the proof is all that is necessary to establish the point in issue. . ." I Jones, Evidence (4th ed.) 6. The evidence on the issue of the existence of hereditary right in Puaatuua very clearly preponderates in his favor. On the one hand we have the assertion of Togafau and his witness Afemata that Puaatuua is without hereditary right. On the other hand we have the testimony of Afemata on cross examination that there was a Logo Tua and that Puaatuua is his grandson. We also have the failure of Togafau to produce the Logo family record which he stated he had in his possession. We have the direct testimony of Puaatuua that he is the grandson of Logo Tua. The truth of his testimony is strengthened significantly by the family history record which he produced showing that his grandfather was Logo Tua. The failure of Togafau to produce the Logo family record which he prepared and had in his possession greatly weakens the case for Togafau. Also the testimony of Afemata that he was a member of the Logo family and con-

nected with Puaatuua through the Tapopo family of Alao taken with the testimony of Puaatuua that his grandmother was Sa, the daughter of a Tapopo, who married Logo Tua, strengthens the case for Puaatuua.

We can come to no other conclusion particularly in view of Togafau's failure to produce the Logo family record book and the testimony of his own witness Afemata on cross examination that Puaatuua is the grandson of Logo Tua than that the evidence preponderates in favor of Puaatuua.

We can see no reason for changing our prior decision. We hold that Puaatuua prevails over the other candidates on the first, second and fourth issues and that while Puaatuua has hereditary right with one-fourth Logo blood in his veins, nevertheless both Togafau and Nuu, each with one-half Logo blood in his veins, and Lemanu, with more than one-fourth and less than one-half Logo blood in his veins, prevail over Puaatuua on the third issue.

Since Puaatuua prevails over the other candidates on three issues, nevertheless under Sec. 933(1) of the A. S. Code the title must be awarded to him by the court despite the fact that other candidates prevail over him on the third issue of hereditary right.

Accordingly, it is ORDERED, ADJUDGED and DE-CREED that Puaatuua Salofi shall be registered as the holder of the matai name Aumoeualogo of Aoa upon his filing with the Registrar of Titles his resignation from the matai title Puaatuua within 15 days from the date hereof. The Registrar of Titles will be so advised.

The provision for payment of costs as set out in the last paragraph of the original decision will remain in force. An additional $25.00 in costs incident to the rehearing are hereby assessed against Togafau and a like additional sum against Lemanu Tuitui who joined with Togafau in the petition for rehearing.

556

/s/ A. A. Morrow, Chief Justice
/s/ Tiumalu, District Judge
/s/ Muli, District Judge

July 31, 1950.

(1) Sec. 933 reads as follows:

"In the trial of matai name cases, the High Court shall be guided by the following in the priority listed:

(a) The wish of the majority or plurality of the family;

(b) The forcefulness, character, personality and capacity for leadership of the candidate;

(c) The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise the male descendant shall prevail;

(d) The value of the holder of the matai name to the Government of American Samoa."